Battle, J.
 

 When this ease was on trial before me while presiding in the Court below, the main objection to the title set up by the defendant, under the sale made by the plaintiff’s first guardian, Glass, was that the authority conferred upon the County Courts by the acts of 1784 and 1801 (1
 
 Rev. Stat. ch.
 
 57,
 
 sec.
 
 1 and 2) was a special one, which must be strictly pursued ; and that the County Court of Orange, in making the order in question, had exceeded the authority, with which it was invested ; and that therefore the order and all the proceedings under it were void. In support of this position, the counsel for the plaintiff cited and l’elied upon, the case of
 
 Leary
 
 v.
 
 Fletcher,
 
 1 Ired. Rep. 259, in which it was held that the County Court, in proceeding under the act of 1789 (1
 
 Rev. Stat.ch. 63, sec.
 
 11) authorising an order to issue to a guardian empowering him to sell the property of his ward, for payment of the debts of the ward, must first ascertain that there are debts due by the ward, which render the sale of the property expedient; and that the Court must also select the part or parts of his property, which can be disposed of, with least injury to the ward, and that, therefore, an order in the following words: “ Ordered that A.
 
 W.
 
 the guardian, have leave to sell as much of the lands of S. M. deceased, as will satisfy the debts against said deceased’s estate” is unauthorised and void, and a purchaser of the land under a sale, made by the guardian in pursuance of such order,acquires no title. The difference between the general power of the County Courts, acting
 
 *370
 

 quoad hoc
 
 as Courts of Chancery, by virtue of the autho-rityconferred upon them by the General Assembly,in order* ing the sale of thereai estates of wards by their guardians, and their power in ordering the sale of
 
 personal
 
 property was not distincly presented to the Court in the reply of the defendant’s counsel, nor was the case,
 
 Harris
 
 v.
 
 Richardson,
 
 4 Dev. Rep. 279, brought to its notice. Upon see* ing the latter case, and considering the principles, upon which it was decided, I am satisfied that I eired in my charge to the jury upon the question now under consideration.
 

 The facts of that case were that certain slaves had been sold by the guardian of the plaintiff, Susan Harris, under an order of the County Court, made upon his petition, which set forth that his ward had no other property, than the said slaves, and that they were all expensive to her. The defendant claimed under a sale made by the guardian, and the plaintiff obtained a verdict and judgment in the Court below. But this Court reversed the judgment and granted a new trial, holding that a guardian appointed by the Court of Chancery might, by order of the Court, rightfully^ sell
 
 the personal
 
 property of his ward; and that the Act of 1702, 1 Rev. Stat. ch. 54, confers the same power on the County Courts, so that a guardian, appointed by the latter, might, under a similar order, also sell the personal estate of his ward. The Act of 1801, above referred to, gives to the County Courts the power to appoint guardians of lunatics and idiots, and invests the guardians so appointed with “ the same powers to ail intents, constructions and purposes” as have been conferred upon guardians of orphans-, appointed by the County Courts by virtue of the Act of 1762. It follows from this, that the case of
 
 Harris
 
 v. Richardson, is a direct authority in favor of the order and sale, under which the defendant claims ; and we hold, that, if the sale was made fairly and in good faith by his vendor, he acquired by it a good title to the slaves now sued- for.
 
 *371
 
 We think it proper, however, to repeat the remarks, made
 
 by
 
 the Court in the case just referred to, that such sales are so unusual — the occasions, which would justify them, are so rare — the dangers of imposition on the Court by misrepresentations of the guardian and of corrupt combinations between him and the ostensible purchasers so obvious, that the vigilance of Courts and jurors should be extended in detecting any fraud, which may infect the proceeding.” The judgment must be reversed and a
 
 venire de novo
 
 awarded.
 

 Per Curiam. Judgment reversed and a
 
 venire de novo.